**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Loudermilk and Tiffany Loudermilk, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>Joseph Arpaio, in his official capacity as Maricopa County Sheriff; et al.,<br><br>        Defendants. | No. CV 06-0636-PHX-EHC<br><br>**ORDER** |

Plaintiffs John and Tiffany Loudermilk, individually and on behalf of their minor children, have filed an Amended Complaint against Defendants Joe Arpaio, Sheriff of Maricopa County; Joshua Ray, Joseph Sousa, Richard Gagnon and Michael Danner, Maricopa County Sheriff's Deputies; Rhonda Cash and Jenna Cramer, protective services workers employed by the Arizona Department of Economic Security, Administration for Children, Youth and Families, Child Protective Services; and Julie Rhodes, an Assistant Attorney General for the State of Arizona at the time of the alleged events. (Dkt. 20). Plaintiffs assert claims for constitutional violations that allegedly occurred during a home investigative visit following an anonymous complaint of child neglect. Plaintiffs have asserted a claim for violation of their Fourth Amendment right to be secure from unreasonable searches against Defendant caseworkers Cash and Cramer and the four Sheriff's Deputies (First Claim), violation of Plaintiffs' liberty interest in family privacy and integrity guaranteed by the Fourteenth Amendment's due process clause based on threats to place the children into custody without cause as against Defendant caseworkers Cash and

1  Cramer and Defendant Rhodes (Second Claim), and failure to provide adequate training
2  against Defendant Sheriff Arpaio (Third Claim).

3        Defendants Cash and Cramer have filed an Amended Motion to Dismiss the Amended
4  Complaint (Dkt. 38) for failure to state a claim for relief under Fed.R.Civ.P. 12(b)(6) as
5  based on qualified immunity. Defendant Rhodes has filed a separate Motion to Dismiss the
6  Second Claim for failure to state a claim for relief. (Dkt. 15). Plaintiffs have filed Responses
7  (Dkt. 22 & 40) and Defendants have filed their Replies. (Dkt. 31 & 41).[1]

8  I.
9  Standard of Review

10        A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim.
11  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "A claim may be dismissed only if it
12  appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which
13  would entitle him to relief." Id. (quotation omitted). In deciding on a motion to dismiss, the
14  court should accept all material allegations of the complaint as true, as well as all reasonable
15  inferences that can be drawn from them. Id. (citing Cahill v. Liberty Mut. Ins. Co., 80 F.3d
16  336, 338 (9th Cir. 1996)). A court should only dismiss a claim where there is no cognizable
17  legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. Id.
18  (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988)).

19  II.
20  Plaintiffs' Amended Complaint

21        Plaintiffs have asserted the following allegations in their Amended Complaint. (Dkt.
22  20, Amended Complaint). In January 2005, Child Protective Services ("CPS") received an
23  anonymous tip that Plaintiffs John and Tiffany Loudermilk's children were being neglected.
24  (id., ¶ 13). The tip alleged that the Loudermilks' house was not habitable, it was not painted

---

[1] The remaining Defendants have filed an Amended Answer to the Amended Complaint. (Dkt. 32).

- 2 -

1    on the outside and lacked doors, stairs and adequate flooring, and it was inhabited with
2    rodents. (id., ¶ 14).

3         On or about January 29, 2005, at 12:30 p.m., CPS Agent Brenda Cagle visited
4    Plaintiffs' home in Phoenix and left her business card. (id., ¶ 15). Ms. Cagle requested an
5    appointment to discuss the anonymous tip but did not disclose the specific allegations. (id.,
6    ¶ 16). Plaintiffs declined to meet with her because they had not been provided with the
7    allegations prior to the meeting. (id., ¶ 17).

8         Plaintiffs allege that they learned of the allegations regarding the "habitability" of
9    their home on or about February 7, 2005. (id., ¶ 18). Plaintiffs allegedly had moved into the
10   newly constructed house about a year earlier, finish work remained to be completed, but the
11   house had been approved by the county as habitable. (id., ¶¶ 19-20). Plaintiffs (the
12   Loudermilks) offered to provide CPS with a copy of the occupancy permit. (id., ¶ 21).

13        On Wednesday, March 9, 2005, at approximately 10:00 a.m., Defendants Cash and
14   Cramer, accompanied by two armed and uniformed sheriff's deputies, arrived at Plaintiffs'
15   home. (id., ¶ 22). Defendant Cash indicated that they had a court order permitting them to
16   remove the Loudermilks' children. Cash allegedly pulled out a piece of paper which she
17   claimed was the order. (id., ¶ 23). Plaintiffs allege that Defendant Cash said, "I'd prefer not
18   to remove the children; I just need to come in and look around." (id., ¶ 24). When Plaintiff
19   Tiffany Loudermilk requested to see the order, Defendant Cash refused but stated she could
20   provide the order within five minutes. (id., ¶ 25-27). Plaintiffs allege that, based upon
21   information and belief, Defendants never obtained a court order allowing them to remove the
22   children or search Plaintiffs' home. (id., ¶¶ 28-29).

23        While the Defendant CPS agents and deputies were at the house, Plaintiffs, members
24   of the Home School Legal Defense Association, telephoned that organization and spoke with
25   attorney Thomas J. Schmidt. (id., ¶ 30). Mr. Schmidt requested the cellular phone numbers
26   of the CPS agents, but the agents refused to provide them. (id. ¶ 31). Mr. Schmidt spoke with
27   one of the sheriff's deputies using Plaintiffs' telephone. (id., ¶ 32). The deputy acknowledged
28

- 3 -

1 that Plaintiffs had a right to be free from a search of their dwelling without a court order (id.,
2 ¶ 33), but stated that if Plaintiffs did not permit the search, he would obtain a court order.
3 (id., ¶ 34).

4       The deputy handed the phone to Defendant Cash who spoke with Mr. Schmidt and
5 "adamantly maintained" that unless Plaintiffs consented to the search, she had the authority
6 to arrest Plaintiff Parents and take the children into custody. (id., ¶ 36). Mr. Schmidt
7 allegedly informed Defendant Cash that an anonymous tip was not sufficient to permit the
8 search. (id., ¶ 37). Defendant Cash, however, insisted that she be allowed to enter and search
9 Plaintiffs' dwelling, citing certain Arizona statutes which purportedly allow a search without
10 a court order, but allegedly misrepresenting the law. (id., ¶¶ 38-39). Defendants Cash and
11 Cramer repeatedly asked the Loudermilks what they were hiding and told Plaintiffs that the
12 investigation would be dropped if they could determine that the allegations were false by
13 searching the dwelling. (id., ¶¶ 40-41). These Defendants informed Mr. Schmidt that they
14 could arrest the Plaintiff Parents and remove the children from the home. (id., ¶ 42).
15 Defendants Cash and Cramer further stated that if Mr. Schmidt continued to advise Plaintiffs
16 not to consent to the search, "the Plaintiffs would be handcuffed in front of their children and
17 their children would be taken into custody." (id., ¶ 43).

18       Mr. Schmidt related to Plaintiffs his conversations with the sheriff's deputy and
19 Defendant Cash and advised Plaintiffs to allow Defendants to see the children so they could
20 verify that the children were in good health and well cared for. (id., ¶ 44). Plaintiffs brought
21 their children to the front door so Defendants could see them. (id., ¶ 45). However,
22 Defendants Cramer and Cash continued to insist on searching the home. (id., ¶ 46).
23 Meanwhile, two to four additional police officers arrived at the scene. (id., ¶ 47).

24       Defendant Cash suggested that Mr. Schmidt call "her attorney," Defendant Julie
25 Rhodes, at the State of Arizona Attorney General's Office. (id., ¶ 48). Mr. Schmidt spoke
26 with Defendant Rhodes who allegedly advised him that Arizona gives CPS agents greater
27 latitude to search a person's dwelling than that permitted by the Fourth Amendment when
28

- 4 -

there was suspected child neglect. (id., ¶ 49). Defendant Rhodes allegedly stated that Defendants Cash and Cramer did not need a search warrant or a court order to search Plaintiffs' home and that the Fourth Amendment did not apply to CPS when investigating reported child neglect . (id., ¶¶ 50-51). Defendant Rhodes further stated that if Plaintiffs did not permit the search, the CPS agents could take temporary custody of the children under A.R.S. § 8-821. (id., ¶ 52). Mr. Schmidt allegedly advised Defendant Rhodes there was no necessity under § 8-821 that would allow the CPS agents to remove the children. (id., ¶ 53). Plaintiffs allege that, "Defendant Rhodes then said that unless a search was permitted, CPS agents would remove the children from the Plaintiffs' home." (id., ¶ 54).

Mr. Schmidt related his conversation with Defendant Rhodes to Plaintiffs. (id., ¶ 56). Plaintiffs allege that Defendants intended to arrest the Parents and take the children into custody, and that "[f]aced with this threat, [they] stood aside and did not protest" when Defendants Cash and Cramer entered and searched the dwelling as accompanied by the sheriff's deputies. (id., ¶¶ 57-58). Plaintiffs allege that they permitted the search because of the coercion and threats of Defendants Cash, Cramer and Rhodes, as "backed" by no fewer than four armed, uniformed police officers, and because Plaintiffs wanted to avoid having either themselves or their children taken into custody as Defendants threatened. (id., ¶ 59). The interaction at the front door lasted approximately 40 minutes while the search of the home concluded in less than five minutes. (id., ¶¶ 60-61). Defendants Cash and Cramer told Plaintiffs they found no evidence of abuse or neglect and that the case would be closed. (id., ¶ 62). Plaintiffs later received a letter to this effect dated April 26, 2005. (id., ¶ 63).

### III.

### Discussion

(A) <u>Defendants Cash and Cramer's Motion to Dismiss First and Second Claims: Qualified Immunity</u>.

Pursuant to 42 U.S.C. § 1983, a cause of action is created against any person who, acting under color of state law, deprives a person of his constitutional rights. The qualified

1 immunity inquiry looks to whether, taken in the light most favorable to the party asserting
2 the injury, the facts alleged show that a government official violated a constitutional right.
3 Saucier v. Katz, 533 U.S. 194, 201 (2001); Calabretta v. Floyd, 189 F.3d 808, 812 (9th Cir.
4 1999).  If a violation is found, it must then be determined whether the right was "clearly
5 established" such that a reasonable official would have been aware that the conduct was
6 unlawful in the situation confronted. Saucier, 533 U.S. at 201; Calabretta, 189 F.3d at 812-
7 13.  The second inquiry is considered in light of the specific context of the case, not as a
8 broad general proposition.  Saucier, 533 U.S. at 201.

9       As raised in the context of a motion to dismiss under Rule 12(b)(6), the court can only
10 grant qualified immunity if the facts set forth in the complaint establish that defendants are
11 entitled to qualified immunity. See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). If
12 the plaintiff has failed to allege facts sufficient to establish a violation of any constitutional
13 right, there is no necessity for further inquiries concerning qualified immunity. Haynie v.
14 County of Los Angeles, 339 F.3d 1071, 1078 (9th Cir. 2003).  To determine immunity at the
15 pleading stage, the court must accept the allegations in the complaint as true. Morley, 175
16 F.3d at 759.

17       Plaintiffs have asserted in their First Claim that their Fourth Amendment rights were
18 violated when Defendants Cash and Cramer searched their home.  The Fourth Amendment
19 generally prohibits the warrantless entry of a person's home except in a few well-defined
20 circumstances, such as based on voluntary consent or exigent circumstances.  Kyllo v. United
21 States, 533 U.S. 27, 31 (2001); Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). Plaintiffs
22 assert in support of their Second Claim that their Fourteenth Amendment rights were violated
23 when Defendants Cash and Cramer repeatedly threatened to remove the children without
24 cause.  "The Fourteenth Amendment guarantees that parents will not be separated from their
25 children without due process of law except in emergencies."  Mabe v. San Bernadino County,
26 Dept. of Public Schools, 237 F.3d 1101, 1107 (9th Cir. 2001)(citing Stanley v. Illinois, 405
27 U.S. 645, 651 (1972)).

28

- 6 -

"Officials may remove a child from the custody of its parents without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." Wallis v. Spencer, 202 F.3d 1126, 1136-37 (9th Cir. 2000); Calabretta, 189 F.3d a 813-14. Courts generally have found that entry of social workers or police officers into a home to inspect or remove a child requires a warrant. Calabrettta, 189 F.3d at 813; Roska v. Peterson, 328 F.3d 1230, 1240 (10th Cir. 2003).

With respect to Plaintiffs' claim based on violation of the Fourteenth Amendment, parents and children have a constitutional right to live together without governmental interference and will not be separated without due process of law except in emergencies. Doe v. Lebbos, 348 F.3d 820, 827 (9th Cir. 2003) (citing Mabe, 237 F.3d at 1107). Courts have analyzed threats to remove a child from a family under the fundamental right to familial relations, which includes the liberty interests of parents in the care, custody and management of their children. Doe v. Heck, 327 F.3d 492, 524 (7th Cir. 2003); King v. Olmsted County, 117 F.3d 1065, 1066-68 (8th Cir 1997). The liberty interest in maintaining the family unit is guaranteed by the Fourteenth Amendment. See Heck, 117 F.3d at 523.

Verbal threats generally are not actionable in a federal civil rights proceeding. Nunez v. City of Los Angeles, 147 F.3d 867, 875 (9th Cir. 1998); King, 117 F.3d at 1067 (citing Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992)). Courts have held that a threat constitutes an actionable constitutional violation in certain circumstances, including "when the threat is so brutal or wantonly cruel as to shock the conscience, ... or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers the deprivation of a constitutional right." King, 117 F.3d at 1067. Threats regarding separation from a child may be viewed as coercive, depending upon their operation under the totality of the circumstances. Lynumn v. Illinois, 372 U.S. 528, 534 (1963)(in the context of a confession in a criminal prosecution). In Doe v. Heck, the Seventh Circuit explained that the mere threat to remove a child from the

1 custody of his parents without reasonable suspicion of abuse violated the parents' Fourteenth
2 Amendment right to familial relations. Id., 327 F.3d at 524-25.

3 Based on Plaintiffs' allegations, Defendants Cash and Cramer lacked a warrant at the
4 time of the search. Defendants Cash and Cramer argue, however, that there was no Fourth
5 Amendment violation because Plaintiffs consented to the search. Defendants argue that
6 Plaintiffs were not in custody, no Miranda warnings were given, there is no allegation that
7 the sheriff's deputies drew their weapons, and that Plaintiffs were told by one of the deputies
8 that if they did not permit the search he would obtain a court order, a correct statement of
9 Fourth Amendment law and not a threat. In their Reply, these Defendants agree that the
10 Fourth Amendment applies to investigations of child abuse or neglect by Arizona
11 caseworkers. They acknowledge that an "informant's tip alone would not have justified entry
12 into the Loudermilks' home without their consent," but argue that they could not ignore the
13 informant's information about potential child abuse. (Dkt. 41 - Reply at pp. 3-4). Defendants
14 further clarify that they have not argued that "their entry into the home was justified by
15 exigent circumstances or any other exception to the warrant requirement." (Dkt. 41 - Reply
16 at p. 3). Defendants argue that it was permissible for them to approach the front door and ask
17 for permission to enter and look around, and that Plaintiffs were not "seized" during the
18 incident. Defendants further argue that Plaintiffs received legal guidance from their attorney
19 throughout the incident and thus could not have been "coerced" into permitting the search
20 as they allege.

21 A search conducted with voluntary consent is constitutionally permissible. See
22 United States v. Rodriguez, 464 F.3d 1072, 1077 (9th Cir. 2006) (citations omitted). "Whether
23 consent to search was voluntarily given is to be determined from the totality of the
24 circumstances." Id. Defendants cite the following five factors relevant in criminal cases as
25 bearing on whether consent was voluntary: (1) whether the defendant was in custody; (2)
26 whether the arresting officers had their guns drawn; (3) whether Miranda warnings were
27 given; (4) whether the defendant was notified that she had a right not to consent; and (5)

28

- 8 -

1  whether the defendant had been told a search warrant could be obtained. Id. "[T]hese factors
2  are only guideposts, not a mechanized formula to resolve the voluntariness inquiry." Id.
3  (citations omitted).

4        Plaintiffs do not allege in their Amended Complaint that they were "in custody" using
5  those specific words, that the sheriff's deputies had their guns drawn or that Miranda
6  warnings were given.  Plaintiffs do allege, however, that  Defendants represented that they
7  had a court order allowing them to remove Plaintiffs' children when they in fact did not have
8  an order, and then claimed that an order could be obtained in five minutes.  Plaintiffs further
9  allege that Defendants Cash and Cramer told Plaintiffs' attorney that if they did not consent
10 to the search, they would be arrested and their children would be taken into custody.
11 Defendant Cash allegedly told Plaintiffs' attorney that Plaintiff Parents would be handcuffed
12 in front of their children if he continued to advise them to refuse consent. Plaintiffs further
13 allege that their attorney informed Defendants that they had not pointed to any necessity to
14 remove the children, but that Defendants were still intent on removing them if Plaintiffs did
15 not allow the search.  Defendants' persistence in seeking entry into the home was not a mere
16 brief encounter but allegedly occurred over a period of approximately forty minutes.
17 Moreover, Defendants Cash and Cramer were "backed" by two to four armed police officers.
18 Having reviewed the facts alleged in the Amended Complaint in the light most favorable to
19 Plaintiffs, under Plaintiffs' version of the facts, Defendants by threats and persistence
20 coerced Plaintiffs into consenting to the search of their home.  Plaintiffs have alleged
21 sufficient facts on the face of the Amended Complaint which state a claim for relief based
22 on violation of the Fourth Amendment as to Defendants Cash and Cramer.

23       Regarding Plaintiffs' Second Claim based on violation of the Fourteenth Amendment,
24 Defendants Cash and Cramer argue that Plaintiffs have simply alleged the "knock on the
25 door" by Defendants who were investigating an anonymous tip regarding the habitability of
26 the Loudermilks' home which CPS by Arizona statute is required to investigate. Defendants
27 argue they did not "threaten" Plaintiffs but correctly represented Arizona law to them.
28

- 9 -

1  Defendants again cite Plaintiffs' allegations that they received legal guidance from counsel
2  throughout the incident.

3  The Amended Complaint, however, contains allegations that for approximately forty
4  minutes, Defendants Cash and Cramer sought entry into the Loudermilks' home, despite the
5  attempts by Plaintiff Parents and their counsel to refuse such entry. As further alleged,
6  Defendants represented that they had a court order when they did not.  Defendants allegedly
7  threatened to arrest or handcuff Plaintiff Parents and remove or take the children into
8  custody, "backed" by armed sheriff's deputies. These allegations are a sufficient factual basis
9  for Plaintiffs' claim based on violation of the Fourteenth Amendment.

10  The Court must next determine whether a reasonable official would have been aware
11  that the alleged conduct violated clearly established rights.  "Objectively viewed, a state
12  agent whose duties take her into private homes is deemed to know about the basic
13  constitutional constraints on her activities."  Walsh v. Erie County Dep't of Job and Family
14  Servs., 240 F. Supp. 2d 731, 758-59 (N.D.Ohio 2003)(rejecting a finding of qualified
15  immunity for a social worker). "The principle that government officials cannot coerce entry
16  into people's houses without a search warrant or applicability of an established exception to
17  the requirement of a search warrant is so well established that any reasonable officer would
18  know it."  Calabretta, 189 F.3d at 813.  Similarly, "[t]he constitutional right of parents and
19  children to live together without government interference is well established." Mabe, 237
20  F.3d at 1107 (citing Santosky v. Kramer, 455 U.S. 745, 753 (1982)).

21  Defendants Cash and Cramer argue that they reasonably believed that their conduct
22  was in compliance with A.R.S. § 8-821 and that they are therefore protected by qualified
23  immunity even if their actions are found to violate the Fourth Amendment or Due Process.
24  Defendants argue that they reasonably believed that they had probable cause to take custody
25  of the Loudermilk children and that relying on that probable cause belief, they assumed they
26  were not violating Plaintiffs' due process rights. (Dkt. 38 - Amended Motion to Dismiss, p.
27  14).

28

Section 8-821 provides in relevant part as follows:

> B. A child may be taken into temporary custody by a peace officer or a child protective services worker if temporary custody is clearly necessary to protect the child because probable cause exists to believe that the child is either:
>
> 1. A victim or will imminently become a victim of abuse or neglect.
>
> 2. Suffering serious physical or emotional injury that can only be diagnosed by a medical doctor or psychologist.
>
> 3. Physically injured as a result of living on premises where dangerous drugs or narcotic drugs are being manufactured. ...
>
> ***
>
> H. A person who knowingly interferes with the taking of a child into temporary custody under this section is guilty of a class 2 misdemeanor.

A.R.S. § 8-821(B)(1-3), (H).

Defendants additionally cite A.R.S. § 8-802(C)(6), which provides that "[a] child protective worker shall ... [t]ake a child into temporary custody as provided in § 8-821. Law enforcement officers shall cooperate with the department to remove a child from the custody of the child's parents, guardian or custodian when necessary."

The facts alleged in Plaintiffs' Amended Complaint show that Defendants Cash and Cramer acted in response to an anonymous tip that the Loudermilk children were being neglected and that Plaintiffs' home was uninhabitable. "[A]n anonymous tip, without more, does not constitute probable cause." See United States v. Wright, 215 F.3d 1020, 1025 (9th Cir. 2000)(citing, *inter alia*, Illinois v. Gates, 462 U.S. 213, 227 (1983)). For an anonymous tip to be accorded any weight, there must be some basis that the tip is true. United States v. Luong, 470 F.3d 898, 903 (9th Cir. 2006). As alleged in Plaintiffs' Amended Complaint, another CPS caseworker made a visit to their home approximately a month before the incident involving Defendants and attempted to make an appointment but was not successful. Based on Plaintiffs' allegations, no further action was taken until Defendants arrived at the

residence some weeks later. Plaintiffs further allege that Defendants Cash and Cramer observed Plaintiffs' children at the doorway and saw that they were in good health and cared for. Based on these allegations viewed in the light most favorable to Plaintiffs, the credibility of the tip became increasingly doubtful. In addition, based on Plaintiffs' allegations, there was no warrant to remove the children and no necessity allowing the children's removal without a warrant.

Based on the Amended Complaint's allegations, Defendants Cash and Cramer persisted in seeking entry into Plaintiffs' home in order to search the premises, despite Plaintiffs' continued refusal and consultation with their attorney. Moreover, as further alleged, Defendants persisted in their threats to remove the children if the Plaintiff Parents did not consent to the search, stating that they could arrest or handcuff the Parents in front of the children. Based on the allegations set forth in the Amended Complaint, viewed in Plaintiffs' favor, no reasonable official would have believed that his or her conduct was authorized by state or constitutional law.

Defendants Cash and Cramer are not entitled to qualified immunity based on the allegations appearing on the face of the Amended Complaint. Defendants' Amended Motion to Dismiss is denied.

(B)     Defendant Rhodes' Motion to Dismiss.

Defendant Rhodes filed her Motion to Dismiss addressed to the allegations contained in the Original Complaint. (Dkt. 15). Plaintiffs subsequently filed an Amended Complaint (Dkt. 20) after Defendant Rhodes had filed her Motion to Dismiss. In some instances, the filing of an amended complaint moots a motion to dismiss. The Amended Complaint in this case substituted the "Doe Defendants" with named parties. (Dkt. 17). The Court therefore will consider Defendant Rhodes' Motion to Dismiss as directed at Plaintiffs' Amended Complaint.

Plaintiffs assert in the Second Claim that Defendant Rhodes violated their liberty interest in family privacy and integrity based on threats to take their children into custody

without cause. Defendant Rhodes argues that the facts alleged do not sufficiently demonstrate that she threatened Plaintiffs because Defendant Cash, a CPS caseworker, was required to make a prompt and thorough investigation into the neglect allegation provided by the anonymous tip. Defendant Rhodes argues that she provided correct statements of the law when speaking with Plaintiffs' attorney and that she had no authority to take custody of the children. Defendant Rhodes further argues that there is no allegation that she had personal contact with Plaintiffs or that she was physically at the scene.

The legal discussion set forth above relevant to Plaintiffs' claim of violation of the Fourteenth Amendment applies to Plaintiffs' claim asserted against Defendant Rhodes. Plaintiffs have alleged that Defendant Rhodes provided information to their attorney to the effect that Arizona law gives CPS agents greater latitude to search a person's home than as permitted by the Fourth Amendment when there is suspected child neglect; that Defendants Cash and Cramer did not need a search warrant or court order to search Plaintiffs' home and that the Fourth Amendment did not apply to CPS workers when investigating child neglect; and that if Plaintiffs did not permit the search, the CPS agents cold take temporary custody of the children under A.R.S. § 8-821. Plaintiffs allege that, "Defendant Rhodes then said that unless a search was permitted, CPS agents would remove the children from the Plaintiffs' home." (Dkt. 20 - Amended Complaint, ¶ 54). Plaintiffs have alleged that Defendant Rhodes was working with the other Defendants to coerce Plaintiffs into permitting a search of their home.

In their Response, Plaintiffs cite A.R.S. § 8-803(D), which provides that "[r]efusal to cooperate in the investigation or to participate in the offered services does not constitute grounds for temporary custody of a child except if there is a clear necessity for temporary custody as provided in § 8-821."

Viewing the facts alleged in the Amended Complaint in the light most favorable to Plaintiffs, Plaintiffs have sufficiently alleged that Defendant Rhodes by "threat" exerted "coercive pressure" on them to allow the search of their home so that their children would

- 13 -

not be removed. Plaintiffs have sufficiently alleged a claim of Fourteenth Amendment violation against Defendant Rhodes. Defendant Rhodes' Motion to Dismiss is denied.

Accordingly,

**IT IS ORDERED** that the Amended Motion to Dismiss the Amended Complaint filed by Defendants Cash and Cramer (Dkt. 38) is denied.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendant Rhodes (Dkt. 15) is denied.

DATED this 27th day of September, 2007.

*Earl H. Carroll*
Earl H. Carroll
United States District Judge